**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
:
ZEBADIAH HART,                                    :
                              Petitioner,         :    **OPINION AND ORDER**
                                                  :
          - against -                             :    **09 Civ. 1032 (SAS)**
                                                  :
DALE ARTUS,                                       :
                                                  :
                              Respondent.         :
                                                  :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/20/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Zebadiah Hart ("Petitioner"), proceeding pro se, petitions this Court for a writ of habeas corpus under section 2254 of Title 28 of the United States Code.[1]  For the reasons set forth below, the Petition is denied.

## I.   BACKGROUND

### A.   Hart's Trial

Hart was tried for the January 27, 2000 shooting of Michael Cooks outside a corner store in the Bronx.  Hart and Cooks knew one another because they sold narcotics for the same person – Storky Bennis – and controlled different sides of the same block.[2]  Following a turf dispute, friends of Cooks shot at the

---

[1]     *See* 12/14/08 Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition").

[2]     *See* 10/1/09 Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Mem.") at 2.

Bennis house.[3]  The next day, Cooks and a friend, Carlos Gomez, ran into Hart and Bennis' brother (known as "Ray Dog") at the corner store.[4]  Cooks testified at trial that Hart followed him out of the store and pointed a gun at his head.[5]  Cooks raised his arm to shield his head and Hart fired, striking Cooks in the elbow of his raised arm.[6] As Cooks started to flee, he heard a second shot.[7]  According to the trauma surgeon who testified at trial, Cooks sustained two gunshot wounds:  one to the right elbow and another to the abdomen.[8]

Catan Yehudah, the roommate of Hart's girlfriend, testified that Hart came to their apartment late in the evening on January 27, 2000. According to her testimony, Hart was "uneasy" and "said that he just shot Fats[9] and he had to get rid

---

[3]     *See id.*

[4]     *See id.*

[5]     *See* 4/18/02 Trial Transcript (Direct Examination of Michael Cooks) at 80:16-17.

[6]     *See id.* at 81:12-21

[7]     *See id.* at 82:19-21.

[8]     *See* 4/23/02 Trial Transcript (Direct Examination of Dr. Howard Nadjari) at 261:23-25.

[9]     Cooks testified at trial that his street name is "Fats" and that Hart called him by that name the night of the shooting.  4/18/02 Trial Transcript (Direct Examination of Michael Cooks) at 81:4-6.

of his gun."[10]  According to Yehudah, Hart shot Cooks "because he was having a dispute with one of his friends," which was tied to "previous arguments over drug territory."[11]

Based principally on this evidence, the jury convicted Hart of attempted murder in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Second Degree.[12]

### B.   Post-Trial Proceedings

On May 17, 2002, Hart moved, pursuant to Criminal Procedure Law ("CPL") 330.30, to set aside the verdict on the ground that the trial court erred by: (1) not delivering the requested missing witness charge for the prosecution's failure to call the arresting officer; (2) allowing the prosecution to improperly introduce evidence of Hart's narcotics sales; and (3) unfairly prejudicing Hart by questioning the jury regarding unfounded allegations of juror misconduct or tampering.[13]  On May 20, 2002, the trial court denied Hart's motion and sentenced him, as a persistent violent felony offender, to an aggregate term of twenty-five

---

[10]    4/24/02 Trial Transcript (Direct Examination of Catan Yehudah) at 433:6-15.

[11]    *Id*. at 434:1-14.

[12]    *See* 4/30/02 Trial Transcript (Rendering of the Verdict) at 812:4-18.

[13]    *See* 5/17/02 Affirmation of Bernadette A. Smith, Trial Attorney for Hart, in Support of CPL 330.30 Motion.

years to life in prison.[14]

Hart then moved to vacate his conviction pursuant to CPL 440.10, raising three claims: (1) that the prosecution withheld evidence concerning the extent of Cooks' cooperation and benefit derived therefrom; (2) that the prosecution failed to disclose exculpatory wiretap evidence; and (3) ineffective assistance of counsel.[15] Hart also moved, in the alternative, to vacate his sentence pursuant to CPL 440.20, arguing that he was improperly sentenced as a persistent violent felony offender.[16] The trial court denied the motions.[17]

Hart was granted leave to appeal the denial to the Appellate Division, First Department, which was consolidated with his direct appeal.[18] On appeal, Hart raised the four claims asserted in his 440.10 and 440.20 motions, as well as his 330.30 claim that the trial court erred in allowing the prosecution to elicit testimony about Hart's narcotics sales.[19] On September 20, 2007, the Appellate Division unanimously affirmed Hart's judgment of conviction and the denial of his

---

[14]    *See* 10/1/09 Declaration of Hannah E.C. Moore, Assistant District Attorney, in Opposition to the Petition for a Writ of Habeas Corpus ("Moore Decl.") at 2.

[15]    *See id.*

[16]    *See id.*

[17]    *See People v. Hart*, 43 A.D.3d 722, 722  (1st Dep't 2007).

[18]    *See* Moore Decl. at 4.

[19]    *See id.*

440.10 and 440.20 motions.[20]  By letter application, dated September 28, 2007, Hart sought leave to appeal to the New York Court of Appeals.[21]  By order dated December 6, 2007, the application was denied.[22]

## II.   LEGAL STANDARDS

### A.   Standard of Review for Claims Adjudicated on the Merits in State Court

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA permits a federal court to grant a writ of habeas corpus to a state prisoner only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[23]

As explained by the Supreme Court in *Williams v. Taylor*, a state court decision is "contrary to" clearly established federal law if:  (1) the state court reaches a different result than that mandated by the Supreme Court when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent;" or (2) the state court "applies a rule that contradicts the governing law

---

[20]     *See Hart*, 43 A.D.3d at 722.

[21]     *See* 9/28/07 Letter Application for Leave to Appeal.

[22]     *See People v. Hart*, 9 N.Y.3d 1006 (2007).

[23]     28 U.S.C. § 2254(d)(1).

set forth in Supreme Court cases."[24]  The "unreasonable application" prong of

section 2254(d)(1) permits a federal habeas court to grant the writ,

> if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably
> applies that principle to the facts of petitioner's case. In
> other words, a federal court may grant relief when a state
> court has misapplied a governing legal principle to a set of
> facts different from those of the case in which the principle
> was announced. In order for a federal court to find a state
> court's application of our precedent unreasonable, the
> state court's decision must have been more than incorrect
> or erroneous. The state court's application must have been
> objectively unreasonable.[25]

## B.    Exhaustion of State Court Remedies

Section 2254 provides that a habeas petition by a state prisoner may

not be granted unless "the applicant has exhausted the remedies available in the

courts of the State."[26]  In order to satisfy the exhaustion requirement, a prisoner

"must 'fairly present' his claim in each appropriate state court."[27]  An issue can be

fairly presented in a number of different ways:  by citing a specific constitutional

provision, relying on pertinent federal or state cases employing constitutional

---

[24]     529 U.S. 362, 404-05 (2000).

[25]     *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quotation marks and
citation omitted).

[26]     28 U.S.C. § 2254(b)(1)(A).

[27]     *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*,
513 U.S. 364, 365 (1995)).  *Accord Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d
Cir. 2010) *cert. denied*, 131 S. Ct. 1693 (2011) (same).

analysis, or alleging "'a pattern of facts that is well within the mainstream of constitutional litigation.'"[28]  However, a federal habeas court need not require that a federal claim be presented to a state court if it is evident that the state court would hold the claim procedurally barred.[29]  In such a case, the claim may be "deemed exhausted" by the habeas court.[30]

### C.    Adequate and Independent State Ground

A federal court will not review a question of federal law decided by a state court "if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.  The rule applies with equal force whether the state-law ground is substantive or procedural."[31]  Further, federal habeas review is foreclosed when a state court explicitly invokes a state procedural rule as a basis for its decision, even if the state court has also ruled in the alternative on the merits of the federal claim.[32]

A procedurally barred claim may be considered on the merits in

---

[28]    *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94-95 (2d Cir. 2001) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir. 1982)).

[29]    *See Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006); *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

[30]    *McKethan v. Mantello*, 292 F.3d 119, 120 (2d Cir. 2002).

[31]    *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (quotation marks and citation omitted).

[32]    *See Harris*, 489 U.S. at 264 n.10.

federal court if the prisoner can demonstrate either: (1) "cause" for the default and "prejudice therefrom," or (2) that "failure to review [the] federal claim will result in a fundamental miscarriage of justice."[33]   To show cause, a petitioner must demonstrate that "some objective factor external to the defense" prevented counsel from complying with the procedural rule.[34]   Furthermore, a habeas petitioner may invoke the fundamental miscarriage of justice exception only if he can demonstrate actual innocence.[35]

## III.   DISCUSSION

### A.   Hart's Claims[36]

#### 1.   The prosecution withheld exculpatory evidence

Hart alleges that the prosecution failed to disclose wiretap evidence showing that Cooks was the object of a murder plot by two defendants in an

---

[33]   *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

[34]   *Murray v. Carrier*, 477 U.S. 478, 479 (1986).

[35]   *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("The cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice. *Murray v. Carrier*, 477 U.S. 478 (1986), thus recognized a narrow exception to the cause requirement where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense.") (quotation marks omitted).

[36]   Because Hart's Petition consists of a photocopy of the table of contents and point headings from his Appellate Division brief, I assume, where appropriate, that Hart is raising the same arguments contained in that brief.

unrelated homicide.[37]  Under *Brady v. Maryland*, suppression of material evidence favorable to the accused is a violation of due process.[38]  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[39]

Hart's claim is unavailing.  While the wiretap evidence revealed that the individuals in question had planned to kill Cooks,[40] any "exculpatory value was completely negated by another taped conversation, occurring after the shooting, in which the plotters celebrated the fact that someone *else* had shot the victim . . . ."[41] Given that the tapes "did not suggest an alternative culprit but only an additional motive,"[42] the likelihood that disclosing them would have altered the outcome of the trial is nil, particularly in light of the substantial evidence of Hart's guilt adduced through Cooks and Yehudah's testimony.

The Appellate Division's ruling was not an unreasonable application

---

[37]     *See* Opp. Mem. at 3.

[38]     *See* 373 U.S. 83, 87 (1963).

[39]     *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[40]     *See* Exhibits 9, 10 & 11 to Opp. Mem. (9/29/00 Wiretap Transcripts #1, #3 & #5).

[41]     *Hart*, 43 A.D.3d at 723.  *See also* Exhibit 15 to Opp. Mem. (1/31/01 Wiretap Transcript) (relaying that "somebody . . . hit [Cooks] with a .357 three times," to which the other person responds, "oh that's great").

[42]     *Mendez v. Artuz*, 303 F.3d 411, 413 (2d Cir. 2002).

of *Brady* and Hart's claim is therefore rejected.

### 2. The trial court erred in holding that the prosecution did not mislead the jury regarding the benefit Cooks received for his testimony

Hart asserts that his due process rights were violated because the prosecutor knowingly misled the jury regarding the benefit Cooks stood to receive for his testimony at trial.[43]  It is well-established that a "'a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"[44]  However, Hart has failed to show that any of the testimony at his trial was false.

The claim centers around a letter that was written by Assistant District Attorney Karen Yaremko on Cooks' behalf to the federal judge sentencing Cooks on a weapons charge.  The letter, sent after Hart's trial, informed the judge of Cooks' cooperation as a witness in the murder trial of the two men (Dargan and King) who were heard on the wiretap conspiring to kill Cooks.[45]  The letter briefly

---

43      *See* 3/16/07 Appellant's Brief ("App. Br.") at 42-43.

44      *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  *Accord Shih Wei Su v. Filion*, 335 F.3d 119, 126-27 (2d Cir. 2003).

45      *See* 7/9/02 Letter from Karen Yaremko to the Honorable Alvin K. Hellerstein.

mentioned Cooks' testimony against Hart.[46]  Both the prosecutor and Cooks

acknowledged at trial that Yaremko had offered to write a letter in connection with

the Dargan/King murder case, but that such a letter had not, to date, been written.[47]

Yaremko's testimony corroborated that account.[48]

       The fact that a letter was sent after trial does not, as Hart suggests,

raise a "specter of prosecutorial sleight of hand."[49]  The testimony given at trial

was neither untruthful nor misleading.  The jury was aware that Cooks could

request a letter from Yaremko, but at the time of trial had not done so.  Moreover,

any benefit Cooks derived from a letter from Yaremko was a direct result of his

testimony in the Dargan/King trial and entirely unrelated to his role as a

complaining witness in Hart's trial.  It is thus highly unlikely that the existence of

the letter would have impacted the jury's assessment of Cooks' credibility as a

---

[46]    *See id*.

[47]    *See* 4/22/02 Trial Transcript (Redirect Examination of Michael Cooks) at 207:21-208:12 (In response to the prosecutor's question of whether Cooks was "made any promises" for his testimony in the Dargan/King case, Cooks stated, "It was only about a letter."  When the prosecutor asked, "are you aware if the District Attorney in that case ever wrote that letter," Cooks responded: "I still haven't seen that letter."); 4/30/02 Trial Transcript (People's Summation) at 701:2-5 ("[ADA Yaremko] said that she told [Cooks] she would write a letter on his behalf . . . .  She testified that, to this date, she has not written that letter.").

[48]    *See* 4/25/02 Trial Transcript (Direct Examination of Karen Yaremko) at 549: 4-17 ("[A]ll I had said to him was that I would write a letter to the judge in Federal Court if he wished me to do so . . . . He never asked me to do so.").

[49]    App. Br. at 39.

witness against Hart.

Hart was not deprived of due process and his claim is rejected.

### 3.   Ineffective assistance of counsel

The Supreme Court has held that the Sixth Amendment's guarantee of assistance of counsel is the right to the effective assistance of counsel.[50]   In order to set forth a basis for relief on that ground, petitioner must satisfy the two-part test established in *Strickland v. Washington:*  (1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms,"[51] and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[52]

Hart raises four possible grounds of ineffective assistance, which are discussed in turn.

### a.   *Counsel allowed Hart's nickname, "Mad Dog" to be introduced*

Prior to trial, defense counsel successfully moved to preclude evidence that Hart's nickname was "Mad Dog."[53]  However, when cross examining

---

[50]    *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[51]    *Id.* at 687.

[52]    *Id.* at 694.

[53]    *See* Opp. Mem. at 26-27.

Cooks, defense counsel read from a prior statement that Cooks had given to the police, which included references to "Mad Dog."[54]  The prosecutor subsequently asked for permission to clarify who Cooks was referring to when he used the name "Mad Dog."[55]  Over defense counsel's objection, Cooks was recalled and testified that he had been referring to Hart.[56]

As an initial matter, Cooks' prior statement had impeachment value and its introduction may have been "sound trial strategy" in spite of the reference to Hart's nickname.[57]  Parts of the statement were inconsistent with Cooks' trial testimony, and the statement revealed that Cooks had initially failed to tell the police that his friend, Carlos Gomez, was present and could identify the assailant.[58]  Indeed, Cooks denied any memory of giving the statement when counsel confronted him with it, which may have tarnished his credibility.[59]  Viewing this cross examination in the "highly deferential" manner mandated by *Strickland*, defense counsel's conduct falls within the "wide range of reasonable professional

---

[54]     *See id.* at 27.

[55]     *See id.* at 27-28.

[56]     *See id*. at 28.

[57]     *Strickland*, 466 U.S. at 689 (quotation marks and citation omitted).

[58]     *See* Opp. Mem. at 30.

[59]     *See* 4/22/02 Trial Transcript (Cross Examination of Michael Cooks) at 204:7-10 ([Defense counsel]: "So you deny that you . . . told that to Detective Rodriguez? [Cooks]: "I don't recall telling him that story.").

assistance."[60]

In any event, even if defense counsel erred in inadvertently opening the door to Hart's nickname, the impact of such a passing reference was likely minimal.[61] The prosecutor's clarifying redirect was confined to asking Cooks who he was referring to when he used the moniker "Mad Dog," and did not seek to elicit any further information about the basis for the nickname.[62] Moreover, any contention that the revelation of Hart's nickname affected the outcome of the case is belied by the compelling evidence of his guilt.

### b.   *Counsel mishandled allegations of jury tampering*

Hart asserts that his attorney was ineffective because she "mishandled the interrogation of jurors" following allegations of jury tampering.[63] Hart contends that counsel should not have agreed to let the court question each juror regarding whether they had been approached by a civilian during trial without first

---

[60]   *Strickland*, 466 U.S. at 689.

[61]   *See United States v. Mitchell*, 328 F.3d 77, 84 (2d Cir. 2003) (references to defendant's nickname, "Phox," together with questions about whether foxes are sly, were "arguably inappropriate" but "were not prejudicial in view of the fact that they were brief and isolated and in light of the substantial evidence of guilt adduced by the government").

[62]   *See* 4/22/02 Trial Transcript (Redirect Examination of Michael Cooks) at 227:15-18.

[63]   App. Br. at 49.

"verify[ing] the allegation."[64]  However, defense counsel followed a reasonable

course of action consistent with "prevailing professional norms."[65]  Hart's claim is

thus rejected.

        During trial, the prosecutor informed the court that a detective from

her office had spoken with an inmate housed with Hart who had heard Hart say

that "he was going to beat the case because his girlfriend had spoken to three jurors

on the panel."[66]  The prosecutor relayed the substance of one of the alleged

conversations, in which a juror supposedly informed Hart's girlfriend that he did

not like Mr. Cooks' testimony and was leaning toward acquittal.[67]  The trial court

determined that an individual inquiry of each juror was appropriate and defense

counsel agreed.[68]

        Following these brief interviews, during which all jurors denied being

approached by a civilian about the trial,[69] defense counsel moved for a mistrial on

the ground that the inquiry "was frightening and intimidating and that if there had

been jurors who were inclined to acquit [Hart], that after this interrogation of sorts,

---

[64]    *Id*. at 50.

[65]    *Strickland*, 466 U.S. at 687.

[66]    4/25/02 Trial Transcript (Proceedings) at 510:2-10.

[67]    *See id*. at 511: 3-9.

[68]    *See id*. at 512:12-14.

[69]    *See id*. at 514-530.

that they would be afraid to do so."[70]  The judge denied the motion.[71]

It was hardly unreasonable for defense counsel to have consented to the inquiry undertaken by the court because that procedure conforms to the New York Court of Appeals' explicit instructions to trial courts that are confronted with evidence of juror misconduct:

> [T]he trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant. Counsel should be permitted to participate if they desire. In a probing and tactful inquiry, the court should evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case.[72]

Given that the trial court was required to determine that all jurors remained qualified to serve, defense counsel's acquiescence in that process does not constitute evidence of ineffective assistance.

### c.   Counsel did not alert the court to a potential sleeping juror

Hart alleges that counsel was ineffective for failing to alert the court that a juror was sleeping while the jury charge was being read.[73]  This claim is entirely unsubstantiated.

---

[70]   *See id*. at 533:20-534:2.

[71]   *See id*. at 534:20-25.

[72]   *People v. Buford*, 69 N.Y.2d 290, 299 (1987).

[73]   *See* App. Br. at 50.

Hart raised the claim for the first time at sentencing but refused to identify which juror was allegedly sleeping.[74]  Defense counsel made no mention at that time of observing a sleeping juror and did not raise the issue in her motion to set aside the verdict pursuant to CPL 330.30.[75]  Because the issue was not brought to the trial court's attention at a time when the court could have addressed it, there is no way of knowing whether a juror with his or her eyes closed was actually sleeping, "as opposed to daydreaming or concentrating with eyes shut."[76]  The claim is also improbable since the court would likely have observed a sleeping juror while reading its charge.

The Appellate Division's ruling that this claim lacks merit is not an unreasonable application of *Strickland*.

> **d.    *Counsel failed to challenge Hart's adjudication as a persistent violent felony offender***

This claim is without merit.  At Hart's behest, defense counsel objected to Hart's adjudication as a persistent violent felony offender, despite having correctly explained to Hart that he had waived this claim by failing to raise

---

[74]    *See* Opp. Mem. at 35.

[75]    *See id*.

[76]    *Ciaprazi v. Senkowski*, 151 Fed. App'x 62, 64 (2d Cir. 2005).

it previously.[77]  Defense counsel could not possibly have done more.  The claim is rejected.

### 4. The trial court erred in allowing the prosecution to elicit testimony that Hart was a known drug dealer

Hart claims that the trial court erred in admitting evidence that Hart was a rival drug dealer of Cooks.  Ordinarily, an erroneous application of state evidentiary rules, by itself, does not merit habeas relief.[78]  To prevail on a due process claim, Hart must show that the alleged evidentiary error "was so pervasive as to have denied him a fundamentally fair trial."[79]  However, Hart has failed to show even that the trial court's ruling was erroneous.

At trial, the People offered evidence that Cooks, Ray Dog, and Hart had all sold drugs for Bennis, but that a turf dispute and falling out had precipitated the shooting.[80]  As the Appellate Division noted, this evidence "provide[d] necessary background information, to place the testimony regarding the shooting in context, and to establish [Hart's] motive for shooting the victim."[81]  Indeed, "New

---

[77]     *See* Opp. Mem. at 42.  The procedural bar relevant to Hart's attack on his predicate felony is discussed *infra*.

[78]     *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[79]     *Sims v. Stinson*, 8 Fed. App'x 14, 16 (2d Cir. 2001).  *Accord Agurs*, 427 U.S. at 108.

[80]     *See* Opp. Mem. at 37.

[81]     *Hart*, 43 A.D.3d at 723-24.

York courts have consistently held that drug transactions are admissible 'uncharged crimes' to show a motive for a murder or attempted murder and to complete the narrative of the events leading up to the murder."[82]  Moreover, the trial court gave a limiting instruction to the jury immediately following Cooks' testimony, clarifying that any evidence of criminal conduct prior to the shooting was to be considered for the limited purpose of "explaining background circumstances."[83]

The trial court did not err in ruling that the probative value of Hart's drug dealing outweighed any prejudicial effect.  Even if the ruling was in error, Hart's claim is unavailing because there is no colorable argument that such evidence rendered his trial fundamentally unfair.

### 5.   Hart was improperly sentenced as a persistent violent felony offender

Hart seems to raise and connect two claims related to his adjudication and sentence as a persistent violent felony offender.  *First*, that his sentence is

---

[82]   *Rivera v. Duncan*, No. 00 Civ. 4923, 2001 WL 1580240, at *24 (S.D.N.Y. Dec. 11, 2001).  *See, e.g.*, *People v. Mena*, 269 A.D.2d 147, 148 (1st Dept. 2000) (evidence that the "defendant and the victim were drug dealers who sold drugs at the same location" and had recently argued, "permitted the jury to draw a reasonable inference, without resort to speculation, that the murder was motivated by a territorial dispute among competing drug dealers").

[83]   4/18/02 Trial Transcript (Instruction to Jury in Open Court) at 55:5-23.

unconstitutional in light of *Apprendi v. New Jersey*;[84] and *second*, that he was improperly adjudicated a persistent violent felony offender because he was erroneously deprived of youthful offender treatment for one of his predicate convictions.[85]  Both claims are without merit.

It is clearly established, after *Almendarez-Torres v. United States*, that prior convictions may be used as sentencing enhancements.[86]  Indeed, in *Apprendi v. New Jersey*, the Supreme Court recognized that principle as a "narrow exception" to the general rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[87]  Under New York's scheme, a defendant is subject to an enhanced sentence based solely on the existence of two prior felony convictions,[88] which are not factual findings within the meaning of *Apprendi*.[89] The New York Court of Appeals has thus repeatedly held that New York's persistent felony offender enhancement is consistent with *Apprendi*.[90]  The

---

[84]    530 U.S. 466 (2000).

[85]    *See* App. Br. at 55-57.

[86]    *See* 523 U.S. 224 (1998).

[87]    530 U.S. at 490.

[88]    *See* C.P.L. § 70.08(1).

[89]    *See People v. Quinones*, 12 N.Y.3d 116, 128 (2009).

[90]    *See id.*

Appellate Division's rejection of this claim was based on a faithful application of *Almendarez-Torres* and *Apprendi*.

Hart's claim pertaining to his predicate conviction is procedurally barred.  Hart alleges that his 1994 conviction was unconstitutionally obtained because the court mistakenly believed Hart was nineteen instead of sixteen and thus did not consider youthful offender treatment.[91]  However, the Appellate Division rejected this claim because, under New York's code of criminal procedure, Hart's failure to challenge his prior conviction at his 1995 predicate violent felony hearing constituted a waiver.[92]

This adequate and independent state ground forecloses federal review unless Hart can show cause for the procedural default and prejudice resulting therefrom.[93]  Hart makes no showing of cause or of prejudice.  In any event, no federal constitutional claim is presented.  "The granting or denial of youthful offender treatment is analogous to that of sentencing . . . . Once it is determined that the judge has exercised his discretion within statutory limits, appellate review is at an end."[94]

---

[91]     *See* App. Br. at 56-57.

[92]      *See Hart*, 43 A.D.3d at 724.  *See also* C.P.L. § 400.15(7)(b).

[93]     *See Edwards*, 529 U.S. at  451.

[94]     *United States ex rel. Frasier v. Casscles*, 531 F.2d 645, 647-48 (2d Cir. 1976).  *Accord Auyeung v. David*, No. 00 Civ. 1353, 2000 WL 1877036, at *3

Hart's sentencing claims are therefore denied.

## IV.   CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[95]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[96]  Petitioner has made no such showing.  Accordingly, I decline to grant a COA.  The Clerk of the Court is directed to close this Petition and this case.

---

(S.D.N.Y. Dec. 26, 2000) ("[I]t is well established that the United States Constitution grants no independent due process right either to youthful offender treatment or to any particular procedure for denying it, so long as the trial judge imposed a sentence that was lawful under state law.").

[95]     28 U.S.C. § 2253(c)(2).

[96]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           December 20, 2012

**-Appearances-**

**For Petitioner (Pro Se):**

Zebadiah Hart
02-A-4836
Elmira Correctional Facility
PO Box 500
Elmira, NY 14902-0500

**For Defendant:**

Hannah E.C. Moore, Assistant District Attorney
Bronx District Attorney Office
198 East 161st Street
Bronx, NY 10451
(718) 838-7119